(101 N. W. 898.)

---

JOHN M. CARROLL v. THE TOWNSHIP OF RYE, COUNTY OF GRAND FORKS.

Opinion filed November 23, 1904.

**Surface Water — Improvement of Highways — Liabilities of Township.**

> 1. A township is not liable for the loss suffered by a landowner by the increased flow of surface water upon his land, resulting solely from the improvement of a highway in the ordinary manner without negligence.

**Same.**

> 2. Whether or not any liability would ensue if the surface water had been diverted from a definite channel is not decided.

Appeal from District Court, Grand Forks county; *Fisk,* J.

Action by John M. Carroll against the township of Rye. Judgment for defendant, and plaintiff appeals.

Affirmed.

*William H. Standish,* for appellant.

In all states, having either a common law or civil law rule as to surface water damage, the general rule of negligence prevails, that in the construction of any public improvement, it must be upon a plan that will do no unnecessary damage to those who are protected before the improvement is made. That in such states,

roads cannot be dug through ridges, and the ridges banked higher for the purpose of carrying surface water through the ridge to lands upon the other side of it, and to be made without culverts at suitable distances and places to aid and permit surface waters to cross through the road and take them in their natural course. And where roads are thus built carelessly or purposely in violation of these provisions and to divert surface waters to lands that did not receive them before, to the damage of parties, the township is liable, whether it had any lawful purpose in view or not. There is no common law rule of surface water damages in any state having the constitutional provision of Article 14 of the Constitution of North Dakota, that no person shall be damaged by a public corporation without compensation. The defendant township had no right to construct a ditch or dike through a ridge without suitable culverts to keep the surface water in its natural course, and to divert it in large quantities from going into the defendant township and on to the farms therein to the damage of their owners. Patoka Township v. Hopkins, 30 N. E. 896; Davis v. City of Crawfordsville, 21 N. E. 449; Weddell v. Hapner, 24 N. E. 368; Davis v. Commissioners of Highways, 33 N. E. 58; Young v. Commissioners of Highways, 25 N. E. 689; Anderson v. Henderson, 16 N. E. 232; Cassidy v. Old Colony R. R. Co., 5 N. E. 142; Bates v. Inhabitants of Westborough, 23 N. E. 1070; Rychliche v. City of St. Louis, 11 S. W. 1001; Gembler v. Echterhoff, 57 S. W. 313; Grimstead v. Sanders et al., 56 S. W. 665; Rice v. Norfolk & C. R. Co., 41 S. E. 1031; Farkas et al. v. Towns et al., 29 S. E. 700; Baltimore Breweries' Company v. Ranstead, 28 Atl. 273; Eshelman v. Twp. of Martic, 25 Atl. 178; Glass v. Fritz 23 Atl. 1050; Torrey v. City of Scranton, 19 Atl. 351; Davidheiser v. Rhodes, 19 Atl. 400; Whipple v. Village of Fair Haven, 21 Atl. 533; Miller v. Mayor of Morristown, 20 Atl. 61; Slack v. Lawrence, 19 Atl. 663; Field v. Town of West Orange, 2 Atl. 236; John v. City of Parkersburg, 16 W. Va. 702, 37 Am. Reps. 779; Jutte v. Hughes, 67 N. Y. 267; Noyes v. Casselman, 70 Pac. 61; Sanguinetti v. Pock, 69 Pac. 98; Gray v. McWilliams, 32 Pac. 976; Los Angeles Creamery Association v. City of Los Angeles, 37 Pac. 375; Cushing v. Piries, 57 Pac. 572; Rudel v. Los Angeles County, 50 Pac. 400; Finkbinder v. Ernst, 85 N. W. 1127; Leidlein v. Meyer, 55 N. W. 367; Yerex v. Eineder, 48 N. W. 875; Gregory v. Bush, 31 N. W. 90; Andrews v. Village of Steele City, 89 N. W. 739; Fremont, E. & M. V.

R. Co. v. Marley, 40 N. W. 948; Lincoln Street Ry. Co. v. Adams, 60 N. W. 83; Bonderson v. Burlington & M. R. R. Co., 61 N. W. 721; Jacobson v. Van Boening, 66 N. W. 993; Shuster v. Albrecht, 73 N. W. 990; Oftelli v. Town of Hammond, 80 N. W. 1123.

*Bosard & Bosard,* for respondent.

The roads graded in the defendant township were necessary in order that the owners of the land in that township could use it by having good roads on which to travel and haul their crops to market. In making such improvements, it was necessary to excavate along the sides of the road to get earth to build it; there was no more excavation than was necessary, and if the surface waters were thereby diverted to some extent, or there was more of it flowed in a certain direction than before, and on or over the lands of others and they were thereby damaged, it is a damnum absque injuria. Bolwsby v. Speer, 2 Vroom, 351, 86 Am. Dec. 216; Gannon v. Hargaden, 10 Allen, 106, 87 Am. Dec. 625; Luther v. Winnesimmet Co., 9 Cush. 171; Flagg v. Worcester, 13 Gray, 601; Dickinson v. Worcester, 7 Allen, 19; Franklin v. Fisk, 13 Allen, 211, 90 Am. Dec. 194; A. T. & Santa Fe R. R. Co. v. Hammer, 22 Kan. 763, 31 Am. Rep. 216; Cairo & V. R. R. Co. v. Stevens, 73 Ind. 273, 28 Am. Rep. 139; Jordan v. St. P., M. & M. R. Co., 6 L. R. A. 573; Lee v. Minneapolis, 22 Minn. 13; O'Brien v. St. Paul, 25 Minn. 331; Henderson v. City of Minneapolis, 32 Minn. 318, 20 N. W. 322; Rowe v. St. Paul, M. & M. R. Co., 43 N. W. 76; Johnson v. Chicago, St. P., M. & O. R. Co., 14 L. R. A. 495; Waters v. Bay View, 61 Wis. 642, 21 N. W. 811; Allen v. City of Chippewa Falls, 52 Wis. 430; 28 Am. Rep. 748, 9 N. W. 284; Hoyt v. City of Hudson, 27 Wis. 656, 9 Am. Rep. 473; Lessard v. Stram, 62 Wis. 112, 51 Am. Rep. 715, 22 N. W. 284; Hamlin v. Chicago & N. W. R. Co., 61 Wis. 515, 21 N. W. 623; O'Connor v. Fond du Lac A. P. R. Co., 52 Wis. 526, 38 Am. Rep. 754, 9 N. W. 287; Eulrich v. Richter, 37 Wis. 226; Ramsdale v. Foote, 55 Wis. 560, 13 N. W. 557; Waters v. Village of Bay View, 21 N. W. 811.

The rule is the same with respect to an adjoining land owner changing the surface of his land, or placing obstructions or embankments thereon, to change the course of surface water thereon. Lessard v. Stram, 22 N. W. 284; Hamlin v. Chicago & N. W. R. Co., 61 Wis. 515, 21 N. W. 623; O'Connor v. Fond du Lac, etc., Ry. Co., 52 Wis. 526, 9 N. W. 287; Eulrich v. Richter, 337 Wis. 226;

Fryer v. Warne, 29 Wis. 511; Ramsdale v. Foote, 55 Wis. 560; 13 N. W. 557.

The owner of lands is not bound to provide drains or waterways to prevent the accumulation of surface water upon adjacent lands, the natural flow of which is interrupted by changes in the surface of his own lands caused by improvements thereon. O'Brien v. City of St. Paul, 25 Minn. 336; Hoganon v. St. P. M. & M. Ry. Co., 31 Minn. 226, 17 N. W. 374; Township of Blakely v. Devine, 36 Minn. 53, 29 N. W. 342; Pye v. City of Mankato, 36 Minn. 373, 31 N. W. 863; Alden v. City of Minneapolis, 24 Minn. 262; Hoyt v. City of Hudson, 27 Wis. 656; O'Connor v. Fond du Lac, etc., Ry. Co., 52 Wis. 530, 9 N. W. 287; Hamlin v. Chicago & N. W. R. Co., 61 Wis. 515, 21 N. W. 623; Kansas City E. Ry. Co. v. Riley, 33 Kan. 374, 6 Pac. 581; Abbott v. Railroad Co., 83 Mo. 285; Stocker v. Nemaha Co. 93 N. W. 721.

ENGERUD, J.  Plaintiff seeks by this action to recover from the defendant township damages suffered from the flooding of his land, caused by certain drains, ditches, roads and dikes which he alleges had been constructed and maintained by the township in such a way as to gather the surface water from distant territory and empty it upon his lands, upon which it would not naturally have come. The answer was, in effect, a general denial. The trial was before a jury, and resulted in a verdict for the plaintiff after the denial of defendant's motion for a directed verdict. The defendant thereupon moved for judgment in its favor notwithstanding the verdict, and the trial court granted the motion. The sole question on this appeal is whether the evidence justified that ruling.

Plaintiff owns and occupies the northeast quarter of section 18 in Falconer township, in Grand Forks county. That township lies next east of the defendant, Rye township. The surface of both townships, like nearly all Red River valley lands, is an apparently level prairie. There is a general slope towards the north and east, but it is so slight that it is not noticeable to the eye. In 1895 and 1896 the defendant township graded up the section line road from the east line of the townships between sections 13 and 24, and extending west a distance of four miles. This road is known as the "center road." Three years later it graded up the highway on the section line next south of the center road. This grade also extends from the east

line of the township westward a distance of four miles. It may be styled the "south road." Both highways were constructed in the usual way. The earth was taken from both sides of the section line, and piled up in the middle, so as to make the roadbed about eight feet wide at the top, and elevated about a foot or two above the prairie, leaving ditches on each side five or six feet wide and a foot or two in depth. Both these grades connect at the township line with like graded highways in Falconer township, so that on each section line there is a continuous graded road across both townships. The Great Northern railroad track runs diagonally through Falconer township from southeast to northwest, and crosses the southwest part of plaintiff's farm. The railroad crosses the south road one and a half miles east of the township line, and crosses the center road at the southeast corner of section 18. The roadbed for the railroad was made in the same way as the highways. There is a culvert under the railroad on plaintiff's farm. It is claimed by the plaintiff that the highway grades in Rye township obstruct the natural flow of the surface water to the north, and that the ditches on the south side of the respective highways conduct the water east to the railroad ditch, which carries it north to the culvert, whence it spreads out over plaintiff's farm, causing the injuries complained of. Plaintiff's proof tends to show that his farm has been subject to damage from the increased flow of surface water since the construction of the grades in question in Rye township, and claims that such damage has been proximately caused by the construction of said highways. This claim is strenuously denied by the defendant. In view of our decision on other points in the case, it is not necessary to decide this disputed question. For the purposes of this case we may assume that the plaintiff has been damaged, and that such damage is the proximate result of defendant's acts.

In this case, as in every action for the recovery of damages, the first inquiry must be as to whether the defendant has been guilty of any actionable wrong, either of commission or omission. The two essential primary elements of a cause of action in tort are wrongful conduct by one party followed by damages to the other; consequently mere proof of damage suffered by plaintiff, even though proximately caused by defendant's acts, does not establish a cause of action for the recovery of such damages, unless it is proved that the defendant's conduct is a violation of some right of the plaintiff which the law will recognize.

The appellant claims that the township has obstructed the flow of the surface water and diverted it from its natural channels, and that the so-called "civil-law rule" with respect to surface water should be applied. The respondent asserts that the rule known as the "common-enemy rule" adopted in Massachusetts and some other states, is the true rule, but further claims that the facts in the case conclusively show that plaintiff has no cause of action under any rule. Inasmuch as the court must sustain respondent's contention as to the facts, we are compelled to forbear taking any part in the interesting controversy which has engaged the courts for many years, as to which of the conflicting rules is the one which truly voices the common law. Under the "common-enemy rule," which is often called the "common-law rule," neither the upper nor lower proprietor can claim any right of drainage for surface water through mere natural surface channels that do not come within the technical definition of a water course. Gannon v. Hargadon, 10 Allen, 106, 87 Am. Dec. 625; Bowlsby v. Spear, 31 N. J. Law, 352, 86 Am. Dec. 216; R. R. Co. v. Hammer, 22 Kan. 763, 31 Am. Rep. 216; R. R. Co. v. Stevens, 73 Ind. 278, 38 Am. Rep. 139; Allen v. City, 52 Wis. 430, 9 N. W. 284, 38 Am. Rep. 748; Jordan v. R. R. Co., 42 Minn. 172, 43 N. W. 849, 6 L. R. A. 573. It is clear that under this rule the plaintiff could have no cause of action. The so-called "civil-law rule" is, in effect, that natural depressions and channels which afford drainage for surface water cannot be obstructed, or the waters diverted from them, to the damage of others. Gray v. McWilliams, 98 Cal. 157, 32 Pac. 976, 21 L. R. A. 593, 35 Am. St. Rep. 163; Gormley v. Sanford, 52 Ill. 158; Boyd v. Conklin, 54 Mich. 583, 20 N. W. 595, 52 Am. Rep. 831; Railway Co. v. Helsley, 62 Tex. 593; Tootle v. Clifton, 22 Ohio St. 247, 10 Am. Rep. 732; Hughes v. Anderson, 68 Ala. 280, 44 Am. Rep. 147; Barrow v. Landry, 15 La. Ann. 681, 77 Am. Dec. 199; Kauffman v. Griesemer, 26 Pa. 407, 67 Am. Dec. 437.

It will be seen that these conflicting rules grew out of a difference of opinion as to one question, namely, whether or not any right of drainage existed into or through a mere surface channel which was not a technical water course. The courts which held the affirmative followed a more or less modified form of the rule of the civil law dealing with the subject. Those who followed the negative followed the common-enemy rule. Farnham on Waters, section 889d et seq. It is a necessary corollary of either of the rules men-

tioned that there is no right anywhere to the continued flow of surface water which has not taken a definite course, but which spreads out over the surface of the ground. It will be seen, therefore, that neither rule has any application unless some channel for surface water has been obstructed or its waters diverted. In this case plaintiff's evidence conclusively shows that there has been no obstruction of any channel or diversion of waters therefrom. The only claim made as to any such a channel is that there is an irregular depression, which some of the witnesses call a "slough," which is crossed by the center road at a point about 400 rods west of the township line between Rye and Falconer townships, and that east of this slough there is a ridge near the township line, also crossed by the center road. Plaintiff's evidence tends to show that this ridge is a watershed which kept the surface water in that part of Rye township away from Falconer township, and turned it towards the slough, which in turn carried it northward, so that it never reached plaintiff's farm. It is alleged in the complaint, and asserted in argument, that the highway embankment stops the water at the slough, and the highway ditch carries it through the ridge into Falconer township. The evidence furnished by plaintiff's own witnesses, however, conclusively disproves this allegation. Their testimony shows that the highway ditches are substantially uniform in depth, and were not dug deeper through the ridge than west of it. The embankment in like manner is no higher above the prairie in the depression than it is on the ridge. The plaintiff employed a surveyor to make measurements to ascertain the relative elevation of different points along the center road. A plat showing the result of his work was in evidence. It shows that the ridge in question is a gentle undulation of the surface. At its highest point, which is near the east line of Rye township, it is about three and one-half feet above the lowest point of the slough. From this high point the ground slopes gently towards the east and towards the west for a distance of a mile in each of said directions. The top of the ridge is only about two feet higher than the prairie at the foot of each of these slopes. From a point 3,000 feet east of the slough to a point 400 feet east of the Rye township line, the bottom of the ditch is generally higher than the top of the grade at the slough, and about midway between these two points the bottom of the ditch is one foot higher than the top of the grade at the slough. In wet seasons the water ran across the highway at the slough. It is manifest that the

highway embankment and ditch could not, under such circumstances, divert the flow of surface water from the slough, and carry it east of the ridge. It follows, therefore, that the plaintiff is in no position to invoke the rule of the civil law as to surface water, because that rule simply forbids the diversion of surface water from its accustomed channels to the injury of another, either by obstructing or diverting a natural channel, or cutting through a natural watershed. As we have seen, it has no application to surface water which does not follow any definite channel, but is diffused generally over the surface.

Counsel, however, contend that the evidence shows that since these highways were constructed in Rye township the flow of surface water on plaintiff's farm has been greatly increased; that this increase is due to no other cause than said highways, and that, if culverts had been provided in these highways from north to south at reasonable intervals, no damage would have resulted. In other words, counsel's proposition is, that even though the surface water has not been diverted from a definite channel, or carried by artificial ditches through a natural watershed, yet the defendant should have so constructed its road that the surface water would not have flowed upon the premises in greater quantities, or in a different manner, from what it naturally was wont to flow, and that if, by the construction of its embankments, ditches and culverts, though constructed in the usual and ordinary manner, larger quantities of surface water were permitted to accumulate, and were discharged upon plaintiff's land in an unusual manner, whereby they sustained injury, the defendant was liable in an action for damages for such injury. In support of this proposition, counsel relies on the maxims: "No one should suffer by the act of another." Rev. Codes 1899, section 5082. "For every wrong there is a remedy." Rev. Codes, section 5085. "One must so use his own rights as not to infringe on the rigths of another." Rev. Codes 1899, section 5076. As declared in section 5071, Rev. Codes 1899, the maxims of jurisprudence are not intended to qualify the positive rules of law, but to aid in their just application.

The first maxim has no relevancy to this case. It was intended to be a translation from the Latin of the maxim, "Res inter alios acta alteri nocere non debet," and its correct rendering should be, "A transaction between two parties ought not to operate to the disadvantage of a third." It relates only to the law of evidence.

Sup. Ct.—30

Field's Civ. Code N. Y. section 1975; Broom's Legal Maxims (8th Ed.) p. 954.

It is true that for every wrong there is a remedy, but the wrong referred to is a legal injury. The maxim does not mean that compensation is given for every loss. It simply means that there is a remedy to enforce and protect every legal right, as is indicated by its Latin form, "Ubi jus, ibi remedium." Broom's Legal Maxims (8th Ed.) p. 191.

The third maxim quoted does not mean that one must so use his own rights as not to "damage" another. There is a wide distinction between "damage" and "injury." They bear the same relation to each other as cause and effect. An "injury," in its legal sense, is misconduct, and "damage" is the legal term applied to the loss resulting from misconduct. City v. Voegler, (Ind.) 2 N. E. 821. The true sense of the maxim is that one shall not so use his own property as to injure another, or, as our Code expresses it, "infringe on the rights of another." In the case of Hentz v. Railroad Co., 13 Barb. 646, the court said, at page 658, in discussing this maxim: "Private rights should undoubtedly be effectually guarded, but the courts cannot extend the protection of the interest of any so far as to prevent the lawful pursuits of another. The maxim, 'Sic utere tuo ut alienum non laedas,' is true when correctly construed. It extends to all damages for which the law gives redress, but no further. If it should be applied literally, it would deprive us, to a great extent, of the legitimate use of our property, and impair, if not destroy, its value." Again, in the case of Fisher v. Clark, 41 Barb. 329, this maxim was relied upon by the plaintiff, and the court said (page 330): "It is well settled that every man has the absolute right to use his own property as he pleases for all the purposes to which such property is usually applied, without being answerable for consequences, provided he exercises proper care and skill to prevent any unnecessary injury to others." In that case the plaintiff claimed that the defendant had turned a flock of scabby sheep into an inclosure adjoining the plaintiff's sheep pasture, and thereby communicated the infectious disease to the plaintiff's sheep to his damage. It was held that the defendant was not liable. In Panton v. Holland, 17 Johns. 92, 8 Am. Dec. 369, the plaintiff sought to hold the defendant liable for having dug up the soil on a lot adjoining the plaintiff's lot, whereby the plaintiff's foundation walls were broken and shattered by the withdrawal

of support. The court said, among other things: " 'Sic utere tuo ut alienum non laedas,' is a maxim admitted to be correct. The extent of its application is to be considered. The plaintiff insists that without reference to the question of negligence the defendant is answerable for damages. In reviewing the cases I am of the opinion that no man is answerable in damages for the reasonable exercise of a right, when it is accompanied by a cautious regard for the rights of others, where there is no just grounds for the charge of negligence or unskillfulness, and when the act is not done maliciously." And numerous cases are cited in support of that statement. See Broom's Legal Maxims (8th Ed.) p. 365, and authorities cited. In order that this maxim may avail the plaintiff, it must appear that the road work was negligently done. It is conceded that the road work was necessary. Aside from the claim that a culvert ought to have been put in at the slough, it is conceded that the work was done in the usual manner. It is evident that the only practicable method was used. Aside from the possible necessity for a culvert at the slough, there can be no pretense of negligence in the construction of these roads. As has already been shown, the absence of a culvert at the slough could not have caused any damage to the plaintiff. The highway ditches were not dug for drainage purposes, but are the necessary incidental result of the only practicable method of making the roads fit for travel. Whatever damage plaintiff has suffered from surface water diverted by these highways is not traceable to any misconduct on defendant's part.

We are of opinion that the ruling of the trial court was proper, and the judgment is accordingly affirmed. All concur.