## DAVENPORT TOWNSHIP v. LEONARD TOWNSHIP et al.

(133 N. W. 56.)

**Surface waters — what are.**

     1. The waters of a water course emptying into a swale, and there spreading

---

Note.—In addition to the L.R.A. notes referred to in the opinion, see note in 65 L.R.A. 250, on the question of the rights and duties of municipalities as to sur-

over considerable areas and losing identity as a stream, and commingled with surface water from other sources, become surface water.

**Surface waters — disposal of.**

2. The disposal of such surface water is governed by the law applying to drainage of surface waters, and no question of riparian rights in running streams is involved.

**Surface waters — diversion by highway ditches — liability.**

3. The diversion of surface water by highway ditches necessarily excavated in building a public highway, although it occasioned damage, is, under the facts of this case, *held* not to be actionable.

Opinion filed October 16, 1911.

Appeal from District court, Cass county; *Pollock, J.*

Action by the Township of Davenport against the Township of Leonard and others. From a decision in favor of defendants, plaintiff appeals.

Affirmed.

*Engerud, Holt, & Frame,* for appellant.

*V. R. Lovell,* for respondents.

Goss, J. This action arises from the inundation of certain lands on and in the near vicinity of the township line between Leonard and Davenport townships, in Cass county, causing damage to highway grades on such township line. The plaintiff asks injunctional relief to prevent defendants from obstructing the natural waterflow by the maintenance of certain highway grades and highway ditches on either side of the same, as heretofore constructed by them, and now maintained on the section line between sections 24 and 25, in Leonard township, and which grade ditches convey water to the township line grade and grade ditches between said townships. The other parties defendants are sought to be enjoined from preventing natural flow water across section 24, owned by them.

---

face water. See also notes in 5 L.R.A.(N.S.) 831, on the liability of a municipality for changing course of surface drainage, and in 30 Am. St. Rep. 390, on interference with surface waters by grading streets.

The water, the cause of the trouble, comes from two sources, melting snow and rainfall, directed by the watershed toward and upon the northern portion of section 25 and the southerly part of section 24, in Leonard township, and also a stream of water starting from springs on section 35, in Leonard township, thus having a living, constant source, and flowing in a well-defined channel for some 2 miles, emptying its waters into a bog or marsh varying in extent according to seasons. The water thus discharged between 200 and 300 feet south of the south line of section 24 forms a pond or marsh from 15 to 30 rods in width. Though the brook runs constantly, it has no well-defined channel northward and across section 24, but instead, at all seasons, except during high water, its waters are either lost, or end in the lowland adjacent to the creek's mouth. Plaintiff claims there exists a natural outlet from this bog in a northerly direction across section 24, and charges defendants with the diversion of the waters by means of certain artificially created ditches on either side of the highway between sections 24 and 25, extending eastward and joining with similar highway ditches extending north and south on the town-line grade between the two townships. From these township-line ditches, carrying water most of the season, the township highway between the townships is injured by the unusual and increased flow thus produced. These ditches were caused by the excavation necessary to build the road grade, and are shallow, of uniform depth, and such only as necessarily resulted in the use of the ordinary road-grading machinery. They are sufficient, however, to increase the flow of surface water from near the place where discharged from the creek, and to collect additional surface water from the lowlands crossed by such ditches. There are two culverts across the road north of where the spring brook discharges its water. These culverts permit the flow of water to the north side of the east and west grade between sections 24 and 25, and the trial court found that at the end of the larger culvert "an embankment had been constructed and been extended along the south side of the southeast quarter of said section 24, commencing at about the southeast corner of section 24, about a rod north of the south line of said southeast quarter, and run-

ning due west to a point about a rod east of the west line of said south-east quarter section. And that since the purchase of the said southeast quarter section by the defendants Van Arnum and Fritzinger, the said embankment has been permitted by said last-named defendants to remain on said tract as originally constructed. The court also found the discharge of the spring into the portion of section 25 heretofore mentioned, and that the spring "had ceased, and ever since has ceased, to follow a definite channel, but has spread out upon and flowed over the northern half of said section 25 *as surface water, and that a portion of such surface water,* since the construction of the highway road and grade aforesaid, has, during a part of such years [since 1900], *found its way to and accumulated in a road ditch along the south side of the highway road and grade aforesaid,* and has thence flowed north along the west side of the highway road and grade constructed and mantained during said years between section 24, Leonard township, and section 18 in Davenport township."

The plaintiffs admit: That a culvert between sections 24 and 19 of the respective townships, soon after it was made, was partially filled up to prevent the flow of the water through it, and thereafter raised for the same purpose. That the road grades and ditches in question were built in 1900. That the embankment above mentioned along the south line of section 24, and on the north side of the highway grade, was either artificially constructed to prevent the water flowing northward as it emerged from the culvert, or that natural causes created it about 1900. In any event, such embankment obstructed the flow of water across section 24. The owner of the southwest quarter of section 19, in Davenport township (a township supervisor), at one time opened this embankment, permitting the water to flow northerly toward and into a natural depression extending upon or across the section, which act resulted in one of the owners of that portion of section 24 affected (one of the defendants) immediately closing the break through the embankment, turning the waters eastward again toward the township line, and also brought forth a warning from the owner as to dire results that would follow further meddling with his premises.

Witnesses disagree on the flowage of water prior to 1900, but there is practical unanimity in their testimony that in excessive high water the drainage was partially or entirely across section 24, either northward or cornerwise in a northeasterly direction through natural depressions, not amounting to well-defined channels; the channel ceasing where the creek discharged its waters, two or three hundred feet south of section 24. It is also a circumstance mentioned in the testimony, and one of which the court will take judicial notice that the cultivation of the soil and changing of the prairie to cultivated fields, together with droughts prior to 1900, would have had a tendency to diminish the extent of the area naturally covered by such surface water; and, again, that the period from 1900 to the time of the trial of this action, in 1909, was one of excessive moisture from natural causes, which would, no doubt, in the opposite way affect the lands in question. These are urged by defendants as causes for changed conditions now existing from those prior to 1900.

Certain record evidence is before us, among which are exhibits of the original field notes of the survey of the land in question, containing thereon the course of the spring brook mapped to the middle of section 24; evidence of the opinion had by the surveyors on the matter before us at the time of their survey from August 10 to 17, 1870, and June 29, 1874, and August 5 to 10, 1874; one of said plats being from the state engineer's office of this state, and the other from the files of the surveyor general's office of the then territory of Dakota. We also have the plats of two surveyors, testifying on opposite sides of this lawsuit, which plats agree substantially in all important particulars, among which may be noted the schedules as to elevations, showing the surface depressions, and establishing that a natural depression of varying width exists from the mouth of the culvert near the southeasterly corner of the southwest quarter of section 24, and touching the corner of section 13 near or at the southeast corner of said section, showing a gradual but continuous decline, amounting to about 27 inches in traversing the mile, as appears from the plat offered by defendants' surveyor witness, as opposed to a decline of not quite 9 inches in the ditch along the half mile on the south line of the southeast quarter of section 24, from which located point a fall of 11 inches occurs in the ditch running 1 mile north to a point at or near the northeast

corner of section 24. It is true the testimony given by the various witnesses is somewhat conflicting, as it naturally would be, in their descriptions of the lay of the ground and the natural course of drainage in the vicinity in question; but no very substantial conflict occurs, and the surveyors' plats of measurements actually taken we deem conclusive as to elevations. These establish a natural depression, continuing from the culvert near the southwest corner of the southeast quarter of section 24, opposite which culvert, two or three hundred feet distant, the creek discharges into a low or level intervening space, extending from said culvert northeasterly across section 24, and constituting the natural drainageway of excessive water discharged by the spring in the place above described. There is, however, through said depression no channel, and the testimony is insufficient to establish that any well-defined channel ever existed across said section 24. The water in draining across said section has spread out, diffusing itself over considerable areas, varying in width according to natural depressions.

We are satisfied the facts make the decision of this case controlled by Carroll v. Rye Twp. 13 N. D. 458, 101 N. W. 894, wherein the rule was laid down that "a township is not liable for the loss suffered by a landowner by the increased flow of surface water upon his land, resulting solely from the improvement of the highway in the ordinary manner, without negligence." While this is not an action for damages, yet the principle applies to the right of the plaintiff township to restrain damage occasioned by the surface water, as aptly as it does to collect damages so caused, where the flow complained of in either case is augmented and increased beyond its natural state by the ordinary grade ditches necessarily dug in the erection of grades in improvement of township highways.

Counsel seek to discriminate the case cited from the one before us, urging that the water discharged by the brook should not be found to be surface water, but instead should be treated as still within a water course. Under normal conditions, under the facts in this case, the stream disappears, loses its identity and characteristics as such, as much so as though it had emptied into a lake or large body of water, instead of losing its waters, as it does, by spreading them over a considerable surface, enabling them to be absorbed by the ground and perculated through quicksand, or other kind of subsoil, impregnating with moisture

a large area. Under different soil conditions, the accumulations of water at this place might have resulted in a lake or lesser body of water, instead of a slough of stagnant water, largely absorbed by the soil, to the injury of the land and highways in the vicinity. Under these facts, our conclusions from the evidence (found also by the trial court) are the waters discharged from the brook, commingled with surface waters from the other sources mentioned in this opinion, are surface water.

The rights of the parties relative thereto are to be governed by the rules of law applicable to drainage of surface water, instead of by the law as to riparian rights in water courses or streams having definite channels. If we were passing on the rights of riparian owners to the spring brook in question above the place where it discharged its waters, an entirely different holding would result, as we would be dealing with a natural running stream, instead of drainage of surface water. No question of riparian rights is involved herein. The law applicable to water courses is inapplicable under the finding that the water of the brook on its diffusion heretofore described becomes surface water. Thereafter the law as to drainage of surface water governs. This also is to be considered with the fact that its drainage complained of has been occasioned by ditches maintained as improvements made in the performance of official duty by the township officers, defendants, or their predecessors in office. Farnham, Waters, pp. 1553–1578, and chap. 29, same authority. See citations in exhaustive notes to following cases, viz.: Wharton v. Stevens (Iowa) 15 L.R.A. 630; Gray v. McWilliams (Cal.) 21 L.R.A. 593; Cairo, V. & C. R. Co. v. Brevoort, 25 L.R.A. 527; Southern P. R. Co. v. Dufour (Cal.) 19 L.R.A. 92; 64 L.R.A. 236; and 26 L.R.A. 632. Also see Gould, Waters, §§ 263, 264, et seq.; 48 Century Dig., under Waters and Water Courses, and subd. 5 thereof, on Surface Waters.

The action against the township board of Leonard township will not lie. As to the other defendants (landowners across whose lands it is contended the natural waterflow would be), so far as said highway -ditches are concerned, it does not appear that either of them has ever done more than to permit the township officers to keep and maintain the grade, resulting incidentally in the digging of the highway ditches beside the grade; all of which have remained as at present for the past ten years. Consequently, it does not appear how any rights of the town-

ship board of Davenport township (the plaintiff) have been interfered with to its injury by the two defendant landowners. As is well said in Carroll v. Rye Twp.: "Whatever damage plaintiff suffered from surface water diverted by these highways is not traceable to any misconduct on defendant's part." It is uncertain whether the damage to the grade results from the embankment maintained, or whether it results from the act of the member of the board of Davenport township, who, for reasons of his own, rendered drainage of the township line grade impossible by filling in a culvert designed to carry off the water, occasioning this injury. Also it appears that facts exist tending to leave in doubt the question of whether the town-line grade has been properly maintained for highway purposes, leaving out of consideration the drainage of waters.

Under all the facts, we affirm the decision of the trial court.