Donald C. SLAWSON, Plaintiff
and Appellee,

v.

NORTH DAKOTA INDUSTRIAL COMMISSION, Defendant and Appellant.

Civ. No. 10424.

Supreme Court of North Dakota.

Oct. 31, 1983.

---

* Justice WM. L. PAULSON served as a Surrogate Justice for this case pursuant to Section

27–17–03, N.D.C.C.

Fleck, Mather, Strutz & Mayer, Bismarck, for plaintiff and appellee; argued by John Morrison, Bismarck.

Douglas L. Johnson, Asst. Atty. Gen., N.D. Industrial Commission, State Capitol, Bismarck, for defendant and appellant; argued by Douglas L. Johnson.

Zuger & Bucklin, Bismarck, for the Mineral Owners. Appearance by Thomas O. Smith, Bismarck.

ERICKSTAD, Chief Justice.

This is an appeal from a district court judgment reversing that portion of a Commission order providing for a ⅛th cost free royalty interest to owners of unleased mineral interests within a pooled unit. We reverse.

In 1978, Agnes Ceglowski executed an oil and gas lease covering certain minerals in the SW¼ of Section 4, Township 158 North, Range 103 West, in Williams County, North Dakota. The minerals in the SW¼ of Section 4 are owned by the successors in interest of Agnes Ceglowski. The minerals in the SE¼ of Section 4 are owned by the United States of America in trust for the heirs of Marje Belgrade.

The 4–1 Tribal well was commenced in the SE¼ of Section 4 in June, 1980, and completed as a producing well by Donald C. Slawson, operator, in September, 1980. On April 28, 1981, the Commission established the Climax Field, consisting of the S½ of Section 4, which was designated as the spacing unit for the 4–1 Tribal well.

On March 24, 1982, some of the successors in interest of Agnes Ceglowski [hereafter Mineral Owners] applied to the Commission for an order pooling all interests in the S½ of Section 4. An earlier attempt by Slawson at voluntary pooling was unsuccessful. Evidence at the hearing indicated that the Mineral Owners' lease, under which Slawson apparently had a working interest, had expired or terminated at some point after the well was completed. The Commission found that the Mineral Owners' mineral interests in the spacing unit were unleased. All the parties have treated the mineral interests as unleased, as will we.

On May 21, 1982, the Commission issued its order pooling all the oil and gas interests in the S½ of Section 4. Among other things, the order provided:

"(4) That any unleased interests within the spacing unit shall be treated as cost free royalty interests as to ⅛ thereof and as working interests as to the remaining ⅞ of the unleased interest."

Slawson appealed to the district court, which concluded that the Commission is without statutory authority to enter that portion of the order quoted above. This appeal was then lodged from the judgment.

While all of the parties have stated the issues on appeal slightly differently, they can be stated as follows:

1. Whether the Commission has authority to treat unleased mineral interests as cost free interests as to ⅛th thereof when entering a forced pooling order pursuant to Section 38–08–08, N.D.C.C.

2. Whether failure to grant a cost free interest to an unleased mineral owner would violate either the due process clause or the equal protection clause of either the North Dakota Constitution or the United States Constitution.

The standard of review applicable to orders of the Commission is stated in Section 38–08–14(4), N.D.C.C.:

"... Orders of the commission shall be sustained if the commission has regularly pursued its authority and its findings and conclusions are sustained by the law and by substantial and credible evidence."

■ Whether or not the Commission has the authority to treat unleased mineral interests as cost free interests as to any portion thereof is a question of law. Administrative agency decisions on questions of law are fully reviewable on appeal. *Northern States Power Co. v. Hagen,* 314 N.W.2d 278 (N.D.1982).

■ The purposes of pooling are to prevent the physical and economic waste that accompany the drilling of unnecessary wells and to protect the correlative rights[1] of landowners over a reservoir. 6 H. Williams and C. Meyers, Oil and Gas Law § 901, p. 3 (1981 Ed.). *See also,* 1 R. Myers, The Law of Pooling and Unitization § 8.01(2), p. 256 (1967 Ed.). These purposes are reflected in § 38–08–01, N.D.C.C., which provides, in relevant part:

"*38–08–01. Declaration of policy.* It is hereby declared to be in the public interest to ... prevent waste; to authorize and to provide for the operation and development of oil and gas properties in such a manner that a greater ultimate recovery of oil and gas be had and that the correlative rights of all owners be fully protected; ... "

Section 38–08–08, N.D.C.C., provides in pertinent part:

"*38–08–08. Integration of fractional tracts.*

1. ... In the absence of voluntary pooling, the commission upon the application of any interested person shall enter an order pooling all interests in the spacing unit for the development and operations thereof. Each such pooling order shall be made after notice and hearing, and shall be upon terms and conditions that are just and reasonable, and that afford to the owner of each tract or interest in the spacing unit the opportunity to recover or receive, without unnecessary expense, his just and equitable share.... *For the purposes of this section and section 38–08–10, any unleased mineral interest pooled by*

1. "*Correlative rights*

This term is defined by Nev.Rev.Stat. § 522.020(1) as follows:
'[T]he opportunity afforded, so far as it is practicable to do so, to the owner of each property in a pool to produce without waste his just and equitable share of the oil or gas, or both, in the pool; being an amount, so far as can be practically determined, and so far as can practically be obtained without waste, substantially in the proportion that the quantity of recoverable oil or gas, or both, under such property bears to the total recoverable oil or gas, or both, in the pool, and for such purposes to use his just and equitable share of the reservoir energy.'
There appear to be two aspects of the doctrine of correlative rights: (1) as a corollary of the rule of capture, each person has a right to produce oil from his land and capture such oil or gas as may be produced from his well, and (2) a right of the land owner to be protected against damage to a common source of supply and a right to a fair and equitable share of the source of supply.
When a legislature or administrative body regulates production practices to protect against waste, it may also regulate to insure an equitable distribution of the source of supply. There is some dispute over the power of the state to regulate production practices to insure an equitable distribution of the source of supply, apart from waste. See TREATISE § 204.6" 8 H. Williams and C. Meyers, Oil and Gas Law, Manual of Terms, p. 151 (1982 Ed.).

virtue of this section shall be entitled to a cost-free royalty interest equal to the acreage weighted average royalty interest of the leased tracts within the spacing unit, but in no event shall the royalty interest of an unleased tract be less than a one-eighth interest. The remainder of the unleased interest shall be treated as a lessee or cost bearing interest. Any unleased mineral interest pooled prior to July 1, 1983, shall be entitled to the cost-free royalty interest and working interest as provided in this section from and after July 1, 1983.[2]

2. Each such pooling order shall make provision for the drilling and operation of a well on the spacing unit, and for the payment of the reasonable actual cost thereof by the owners of interests in the spacing unit, plus a reasonable charge for supervision.... If one or more of the owners shall drill and operate, or pay the expenses of drilling and operating the well for the benefit of others, then, the owner or owners so drilling or operating shall, upon complying with the terms of section 38–08–10, have a lien on the share of production from the spacing unit accruing to the interest of each of the other owners for the payment of his proportionate share of such expenses. All the oil and gas subject to the lien shall be marketed and sold and the proceeds applied in payment of the expenses secured by such lien as provided for in section 38–08–10."

Section 38–08–10, N.D.C.C., provides:

"*38–08–10. Development and operating costs of integrated fractional tracts.* A person to whom another is indebted for expenses incurred in drilling and operating a well on a drilling unit required to be formed as provided for in section 38–08–08, may, in order to secure payment of the amount due, fix a lien upon the interest of the debtor in the production from the drilling unit or the unit area, as the case may be, by filing for record, with the register of deeds of the county where the property involved, or any part thereof, is located, an affidavit setting forth the amount due and the interest of the debtor in such production. The person to whom the amount is payable may, at the expense of the debtor, store all or any part of the production upon which the lien exists until the total amount due, including reasonable storage charges, is paid or the commodity is sold at foreclosure sale and delivery is made to the purchaser. The lien may be foreclosed as provided for with respect to foreclosure of a lien on chattels."

The Commission and the Mineral Owners argue that the broad discretion afforded the Commission by § 38–08–08(1), N.D.C.C., includes authority to provide in pooling orders that unleased interests within a spacing unit be treated as cost free interests as to ⅛th thereof.

Slawson, on the other hand, argues that the broad discretion granted in § 38–08–08(1), N.D.C.C., is limited by §§ 38–08–08(2) and 38–08–10, N.D.C.C., so that an unleased mineral owner's entire interest is subject to the statutory lien for costs and expenses.

■ Slawson argues that the Commission's order is an attempt to establish by administrative action a lessor-lessee relationship where none exists. We disagree.

---

**2.** The underscored language was added by an amendment adopted at the Forty-Eighth Session of the Legislative Assembly. S.L.1983, Ch. 401. The bill was introduced at the request of the Commission in response to the trial court's decision in this case. We have said that, "The principles of statutory construction do not prevent a court from looking to subsequent enactments and amendments as an aid in arriving at the correct meaning of a prior statute." *State v. Novak*, 338 N.W.2d 637, 640 (N.D.1983). In this instance, however, because the Legislature provided an effective date, the effect of which the parties have not argued, we do not find the amendment to be particularly helpful in construing the provisions in effect prior to the amendment. The amendment does, however, show that the Legislature deems it just and reasonable that an unleased mineral interest be entitled to a cost free royalty interest of not less than ⅛th.

Under a conventional oil and gas lease, a mineral owner reserves unto himself a royalty interest and conveys unto the lessee a working interest. The right to the royalty interest, however, does not rise from the lease, but from ownership of the minerals.[3] Because he owns the minerals, a mineral owner has a royalty interest or its equivalent whether or not he has executed a lease. A lease only conveys to a lessee a portion of the lessor's interest other than the royalty interest retained.

In speaking of compulsory pooling statutes, the writer in 5 Summers Oil and Gas § 951, p. 57 (1966 Ed.) says that, "In all, a royalty share for the forcibly integrated owner of royalty, or royalty equivalent if the land is unleased, is payable on an expense free basis, for that is the nature of royalty." The same writer says that:

"... If successful in obtaining production, [the drilling party in a compulsory pooling situation] then may recover proportionate actual outlays for drilling, completion costs and cumulative expenses prior to participation by the non-drilling parties. Royalty interests, being expense free, participate in production from inception and if greater than the usual one-eighth apparently are an additional hazard to the drilling party's payout...." 5 Summers Oil and Gas § 974, p. 123 (1966 Ed.).

The expense free nature of a royalty interest, whether or not the mineral interest is the subject of a lease, is also indicated in the following passages:

"Of course if the well fails to produce in quantities sufficient to repay the drilling cost, no payments for the working interest of the nonconsenting owner will be made; however, royalty payments to the nonconsenting owner will be due upon an allocated share of unit production even though such production is insufficient to reimburse the operator for his costs." 6 H. Williams and C. Meyers, Oil and Gas Law § 905.2, p. 26.1 (1981 Ed.).

"Most pooling and unitization statutes afford the owner of unleased lands an

---

**3.** The following definitions of various relevant interests in oil and gas indicate that a right to royalty need not involve a lease:

"*Royalty interest*

The property interest created in oil and gas after a SEVERANCE (*q.v.*) by ROYALTY DEED (*q.v.*). Its duration is like that of common law estates, namely, in fee simple, in fee simple determinable, for life or for a fixed term of years. It is distinguished from a MINERAL INTEREST (*q.v.*) by the absence of operating rights. The owner of a royalty interest is entitled to a share of production, if, as and when there is production, free of the costs of production." 8 H. Williams and C. Meyers, Oil and Gas Law, Manual of Terms, p. 661 (1982 Ed.).

"*Landowner royalty*

A share of the gross production of minerals free of the costs of production. Occasionally the term is used to describe an interest in production created by a landowner independently of a lease as distinguished from a lessor's royalty, which arises under a lease. In this sense, the landowner royalty may have a perpetual or any other specified duration. In most instances the two terms, landowner royalty and lessor's royalty, are used synonymously." *Id.* at 387.

"*Royalty*

(1) The landowner's share of production, free of expenses of production.

(2) A share of production, free of expenses of production, *e.g.*, an OVERRIDING ROYALTY (*q.v.*) of ⅛ of the ⅞ working interest.

The landowner's royalty is frequently ⅛th production, but it may be any other fractional share of production...." *Id* at 656.

"*Working interest*

The operating interest under an oil and gas lease. The owner of the working interest has the exclusive right to exploit the minerals on the land.

In the simple situation of a lessor who executes a lease, reserving ⅛th royalty, to a lessee who creates no burdens on his estate, the working interest consists of ⅞ths of production subject to all costs of exploration and development; the lessor receives his ⅛th of production free of such costs.

. . . .

Although the term working interest ordinarily refers to an interest acquired by a lease, special context may indicate that it is used to describe a mineral interest. See *Schnitt v. McKellar*, 244 Ark. 377, 427 S.W.2d 202, 30 *O. & G.R.* 1 (1968)." *Id.* at 838–838.1.

"*Operating interest*

The mineral interest minus the royalty interest. An interest in oil and gas that is burdened with the cost of development and operation of the property. The operating interest is normally created by an oil and gas lease." *Id.* at 506.

opportunity to share in operating rights and options along with the lessees of other tracts. Whether the owner of such unleased lands must be afforded this option or can be limited to a royalty interest has not been resolved in all states." 6 H. Williams and C. Meyers, Oil and Gas Law § 942, p. 653 (1981 Ed.).

■ We believe the language employed in § 38–08–08(1), N.D.C.C., that pooling orders entered by the Commission "shall be upon terms and conditions that are just and reasonable, and that afford to the owner of each tract or interest in the spacing unit the opportunity to recover or receive, without unnecessary expense, his just and equitable share," is sufficiently broad to encompass the order at issue. An order that unleased mineral interests be treated as cost free interests as to a portion thereof merely recognizes that an owner of unleased minerals has a right to receive a royalty upon production equivalent to a royalty interest upon production pursuant to a lease. Neither the statute, nor an order pursuant to it, creates a cost free royalty interest where none would otherwise exist. The right to a royalty interest under a lease, or its equivalent in the case of unleased minerals, is created by ownership of the full mineral interest.

■ For conditions of a pooling order to be "just and reasonable," the order must afford an unleased mineral owner all that he is entitled to because of his ownership of the minerals. One of the things to which an owner of minerals is entitled is a cost free portion of production.[4] Any share less than that to which a mineral owner is entitled because of his ownership of minerals is not "just and equitable." We conclude that § 38–08–08(1), N.D.C.C., provides the Commission with authority to treat unleased mineral interests as cost free interests as to a portion thereof when entering a compulsory pooling order.

The next question for determination is whether or not that authority is limited by § 38–08–08(2), N.D.C.C., or § 38–08–10, N.D.C.C., in such a manner that an unleased mineral owner's entire interest may be subjected to a lien for costs and expenses incurred by another in drilling in another tract within the spacing unit.

Sections 38–08–08 and 38–08–10, N.D.C.C., were both enacted by Chapter 227, S.L.1953.

"On numerous occasions this Court has stated that statutes must be construed as a whole to determine the intent of the legislature and that the intent must be derived from the whole statute by taking and comparing every part thereof together. Where a general provision conflicts with a special provision in the same statute or other statute the two should be construed, if possible, so that effect is given to both, and if this is impossible the special shall prevail. When statutes relate to the same subject matter in general, or are in *pari materia,* every effort should be made to give meaningful effect to each without rendering one or the other useless." [Citations omitted.] *State v. Mees,* 272 N.W.2d 61, 64 (N.D.1978).

■ Neither § 38–08–08(2), N.D.C.C., nor § 38–08–10, N.D.C.C., is a special statute in conflict with § 38–08–08(1), N.D.C.C. Section 38–08–08(2), N.D.C.C., grants to an owner who drills a well for the benefit of others a right to a "lien on the share of production ... accruing to the interest of each of the other owners for the payment of his proportionate share of such expenses. All the oil and gas subject to the lien shall be marketed and sold and the proceeds applied ... as provided for in section 38–08–10." Section 38–08–10, N.D.C.C., provides the method to be used in fixing the lien provided for by § 38–08–08(2), N.D.C.C.

---

**4.** We are here dealing only with separately owned tracts or interests within a spacing unit. Thus, we are not dealing with one who owns all of the tracts or interests within a spacing unit and who could, conceivably, hire someone to drill a well, rather than entering into a lease.

Such a mineral owner might not have any cost free production if the well did not produce in quantities sufficient to pay the cost of drilling, even though the owner received all of the production.

■ We have already determined that an owner of unleased minerals whose interests have been force-pooled has a royalty interest upon production equivalent to a royalty interest upon production pursuant to a lease. The right is not created by order of the Commission, nor is it created by the statute. The right to a royalty interest rises from ownership of the minerals. The nature of royalty is that it is free of the expenses of production. Such an interest is not subject to any "proportionate share of such expenses." Nor is a royalty interest "subject to the lien" provided for in §§ 38–08–08(2) and 38–08–10, N.D.C.C. Further, to subject an unleased mineral owner's entire interest to recovery by the operator of his expenses in completing a well would require the unleased mineral owner to pay more than his proportionate share of expenses in comparison with persons within the same spacing unit who have leased their interests, only a portion of which, e.g., ⅞ths, is subject to expenses, the rest being cost free.

We find no language in either § 38–08–08(2) or § 38–08–10, N.D.C.C., evincing a legislative intent to require the owners of unleased minerals within a spacing unit to give all ⅝ths (⅛th royalty equivalent, plus ⅞ths working interest equivalent) of production attributable to their interests to an operator until the operator has recovered all his costs while one who owns a royalty interest in leased minerals receives part of the production free of cost in the form of royalty and only a portion, e.g., ⅞ths, goes to the operator.

If the statutes were construed to require that all of the production attributable to the interests of an owner of unleased minerals be subject to appropriation by the operator until the operator has recovered all of his costs, the owner of unleased minerals would be deprived of the equal protection of the laws in that he would not be guaranteed of receiving anything for production attributable to his interest while a royalty owner under a lease would be guaranteed to receive payment for production attributable to his interest.

"Courts will construe statutes so as to harmonize their provisions with the Constitution if it is possible to do so, to the end that they may be sustained." Syllabus paragraph 2, *Tang v. Ping,* 209 N.W.2d 624 (N.D.1973).

To hold as Slawson urges would allow an operator to lease all of the minerals from several owners in a spacing unit, drill the only well permitted in the spacing unit, determine whether or not the well will pay out, and, if he determines that the well will not pay out, drop all but one of the leases and appropriate all of the oil from the owners whose leases he has dropped to recoup his expenses. We find no language in the relevant statutes requiring such a result and we decline to so hold.

■ Landowner's royalty is frequently ⅛th production, but it may be any other fractional share. *See* 8 H. Williams and Meyers, Oil and Gas Law, Manual of Terms, p. 661 (1982 Ed.). Counsel for the Commission stated at oral argument that the standard royalty is ⅛th, and the Commission found in its order that the royalty interest is usually ⅛th. No party has asserted that the cost free royalty, if any at all, to which the unleased mineral interest owners in this case are entitled, should be any fraction other than ⅛th. That, then, is not an issue that need be decided.

Slawson's reliance upon the following statement in *Schank v. North American Royalties, Inc.,* 201 N.W.2d 419, 429 (N.D. 1972), is misplaced:

"... It is a well-established general rule in most jurisdictions that the owners of undivided portions of gas and oil rights in and under the same land are tenants in common and each cotenant may enter upon the premises for the purpose of exploring for oil and gas and may drill and develop such premises. Each cotenant may exercise the same right and privilege with reference to the common property. Each owner in a cotenancy acts for himself, and no one is the agent for the other nor has any authority to bind the other merely because of the relationship, unless authorized to do so. Upon dis-

covery of oil and gas upon the premises, the producing cotenant must account to the nonconsenting or nonproducing cotenant for his pro rata share of the net profits apportioned according to the fractional interest of said cotenant. Each cotenant may lease his undivided interest in the common property without the consent of the other cotenants and such lease is effective as to his interest in the property but ineffective as to the interest belonging to his cotenant." [Citations omitted.]

Here, the parties are not the owners of undivided portions of gas and oil rights in and under the same land. Also, here, the owners of the unleased mineral interests had no right to drill a well after the spacing unit had been determined. Slawson drilled the only well allowed in the spacing unit.

██ We hold that the Commission had the authority in entering a pooling order under § 38–08–08, N.D.C.C., to treat un-

leased mineral interests within the spacing unit as cost free royalty interests as to $\frac{1}{8}$th thereof and as working interests as to the remaining $\frac{7}{8}$ths of the unleased mineral interests.

It is unnecessary to determine whether or not failure to grant a cost free interest to an unleased mineral owner would violate due process.

For the reasons stated, the judgment of the district court is reversed.

VANDE WALLE, SAND and PEDERSON, JJ., and PAULSON,* Surrogate Justice, concur.

---

* Justice Wm. L. PAULSON served as a Surrogate Justice for this case pursuant to Section

27–17–03, N.D.C.C.