STATE of North Dakota ex rel. Nicholas J. SPAETH, Attorney General, Plaintiff and Appellant,

v.

EDDY FURNITURE CO., a North Dakota Corporation, d/b/a Eddy's Furniture, or Eddy's, Inc., Defendant,

and

William L. Peterson, a resident of Minnesota; and William L. Peterson Associates, Inc., a Minnesota Corporation, Defendants and Appellees.

Civ. No. 11036.

Supreme Court of North Dakota.

May 13, 1986.

Allen C. Hoberg, Asst. Atty. Gen., Bismarck, for plaintiff and appellant.

Lundberg, Nodland, Lucas & Schulz, Bismarck, for defendants and appellees; argued by Ardell C. Tharaldson.

LEVINE, Justice.

The State appeals from a district court judgment dismissing its action against William L. Peterson, individually, and William L. Peterson Associates, Inc.[1]  We affirm.

In April 1983, Porter C. Eddy, president of Eddy Furniture Company [Eddy Furni-

---

1. The State's action against Eddy Furniture was settled and Eddy Furniture was dismissed from the case by order of the district court.

ture], employed Peterson[2] to conduct a going-out-of-business sale for Eddy Furniture's Jamestown store. The going-out-of-business sale lasted from June 5, 1983, to October 29, 1983, when Eddy Furniture closed its Jamestown store.

On the advice of Peterson, Eddy Furniture hired additional employees to assist with the sale and ordered substantial amounts of new furniture to be sold, along with its existing inventory, during the going-out-of-business sale. Included in the new furniture ordered was merchandise from factories and suppliers with which Eddy Furniture had not previously done business.

The sale was advertised in area newspapers as a "going-out-of-business" sale. Included in these advertisements were phrases such as: "Price crash"; "Forget any prices you have seen on Furniture!"; "Everything must be sold regardless of cost"; and, "It's panic selling."

The State commenced this action against Eddy Furniture and Peterson alleging that the content and manner of the advertising of the sale and the operation of the sale itself constituted violations of Chapter 51–12, N.D.C.C. [False Advertising], and Chapter 51–15, N.D.C.C. [Consumer Fraud and Unlawful Credit Practices]. Following dismissal of the State's complaint against Eddy Furniture, the State and Peterson entered into a stipulation of facts. Both sides subsequently moved for summary judgment, and the trial court issued findings of fact, conclusions of law, order for

judgment, and judgment dismissing the State's action against Peterson. The parties agree on appeal that the trial court drew inferences from the stipulated facts and that our review of the factual issues is therefore governed by Rule 52(a), N.D.R. Civ.P.[3]

The following issues are raised on appeal:

1) In a consumer protection or false advertising claim based upon fraud, must the State prove fraud by clear and convincing evidence?

2) Were the trial court's findings clearly erroneous?

■ Initially, we must determine the appropriate evidentiary standard to be applied in a proceeding brought by the State alleging a violation of the consumer fraud or false advertising statutes, where the claim is based upon alleged fraudulent conduct. Peterson contends that the fraud must be established by clear and convincing evidence; the State contends that only a preponderance of the evidence is required. Although not specifically addressing this issue, it appears from the record that the trial court applied the "preponderance of the evidence" standard, rather than the "clear and convincing evidence" standard.

The issue presented is one of first impression in this court. Although we have acknowledged that, in general, an allegation of fraud in a civil case must be proved by evidence which is clear and convincing, *e.g., Russell Land Co. v. Mandan Chrys-*

2. The parties dispute whether it was Peterson individually or Peterson Associates which was hired to conduct the sale for Eddy Furniture. This dispute does not affect our resolution of this case, and we will therefore refer to Peterson and Peterson Associates collectively as "Peterson."

3. The procedural posture of this case is similar to that presented in *Equal Employment Opportunity Commission v. Maricopa County Community College District,* 736 F.2d 510 (9th Cir.1984). In *Maricopa County,* the parties stipulated to the facts and the case was decided on cross-motions for summary judgment. The appellate court

concluded that the case should be reviewed on appeal "as if the case had been tried on the written record." *Maricopa County, supra,* 736 F.2d at 513. The court also held that the "clearly erroneous" standard of Rule 52(a), Fed.R. Civ.P., applies to findings of fact derived from stipulated facts. *Maricopa County, supra,* 736 F.2d at 513. We have also held that the "clearly erroneous" standard of Rule 52(a), N.D.R.Civ.P., applies to findings derived from stipulated facts. *Stracka v. Peterson,* 377 N.W.2d 580, 582 (N.D. 1985).

ler-Plymouth, Inc., 377 N.W.2d 549, 552 (N.D.1985), we have not previously applied that standard to the special circumstances presented by a consumer fraud or false advertising case. There appears to be a split among the various jurisdictions which have considered the issue. *See Dunlap v. Jimmy GMC of Tucson, Inc.*, 136 Ariz. 338, 343–44, 666 P.2d 83, 88–89 (Ct.App. 1983) (clear and convincing evidence standard does not apply in action brought under Arizona Consumer Fraud Act); *Smith v. Baldwin*, 611 S.W.2d 611, 616 (Tex.1980) (common law fraud burden of proof inapplicable in action brought under Deceptive Trade Practices Act). *But see Munjal v. Baird & Warner, Inc.*, 138 Ill.App.3d 172, 182–184, 92 Ill.Dec. 809, 818–819, 485 N.E.2d 855, 864–865 (1985) (implying that clear and convincing evidence required to establish fraud under the Illinois consumer fraud act); *Deer Creek Construction Co., Inc. v. Peterson*, 412 So.2d 1169, 1173 (Miss.1982) (clear and convincing evidence required to establish fraud under Mississippi consumer protection statute).

The clearest analysis on the issue has been provided by the Court of Appeals of Arizona, in *Dunlap v. Jimmy GMC of Tucson, Inc., supra*, 136 Ariz. at 343–44, 666 P.2d at 88–89:

"In Arizona, common law fraud must be proved by clear and convincing evidence. *General Accident Fire & Life Assur. Corp. v. Little*, 103 Ariz. 435, 443 P.2d 690 (1968). This, however, is not a case of common law fraud. Consumer fraud is a cause of action which is separate and distinct from common law fraud. *Murray v. Western American Mortgage Company*, 124 Ariz. 387, 604 P.2d 651 (App.1979). The mere fact that the word 'fraud' appears in the title of our consumer protection statute does not give rise to an inference that the legislature intended to require a higher degree of proof than that ordinarily required in civil cases.

"The purpose of legislation such as Arizona's Consumer Fraud Act is to pro-vide a remedy for injured consumers who need such protection to counteract the disproportionate bargaining power which is typically present in consumer transactions. The legislative intent behind the Consumer Fraud Act is to provide consumers with a claim for relief that is easier to establish than is common law fraud. To require the higher degree of proof would frustrate the legislative intent." [Footnote omitted.]

We agree with the reasoning of the Arizona court. We also note that it is generally recognized that consumer protection statutes are remedial in nature, and therefore must be liberally construed in favor of protecting consumers. *E.g., State v. First National Bank of Anchorage*, 660 P.2d 406, 412 (Alaska 1982); *Sprayfoam, Inc. v. Durant's Rental Centers, Inc.*, 39 Conn. Supp. 78, ——, 468 A.2d 951, 953 (Super.Ct. 1983); *Barry v. Arrow Pontiac, Inc.*, 100 N.J. 57, 69, 494 A.2d 804, 811 (1985); *Joseph v. PPG Industries, Inc.*, 674 S.W.2d 862, 865 (Tex.Ct.App.1984). In light of the strong public policy underpinnings of our false advertising and consumer fraud statutes, Chapters 51–12 and 51–15, N.D.C.C., we hold that when an action brought under either chapter is based upon allegations of fraudulent conduct the "clear and convincing evidence" standard does not apply; the alleged fraudulent conduct must be proved by a preponderance of the evidence.

■ The State contends on appeal that the trial court erred when it found that the advertising used to promote the going-out-of-business sale and the operation of the sale itself were not deceptive or fraudulent. The State alleges that Peterson violated Sections 51–12–01, 51–12–08, and 51–15–02, N.D.C.C., which provide:

"*51–12–01. False and misleading advertising prohibited.* No person, firm, corporation, or association with intent to sell, dispose of, increase the consumption of, or induce the public to enter into an obligation relative to, or to acquire title or interest in any food, drug, medicine,

patent and proprietary product, merchandise, security, service, medical treatment, paint, varnish, oil, clothing, wearing apparel, machinery, or anything offered to the public, shall make, publish, disseminate, circulate, or place before the public, ... in a newspaper, or other publication, ... an advertisement which contains any assertion, representation, or statement of fact, including the price thereof, which is untrue, deceptive, or misleading...."

"*51–12–08. False advertising—Generally.* It is unlawful for any person with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, any statement, concerning such real or personal property or services, professional or otherwise or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

"*51–15–02. Unlawful practices—Fraud—Misrepresentation.* The act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice."

The State's argument is essentially that Eddy Furniture's going-out-of-business sale was not an "ordinary" going-out-of-business sale because additional furniture was ordered for the sale, including furniture from factories and suppliers with which Eddy Furniture had not previously done business. The State contends that the consuming public was deceived and misled into believing that Eddy Furniture was conducting a liquidation, close-out sale. In support of its argument, the State makes fine distinctions between "bargain prices," "liquidation prices," and "close-out prices." In effect, the State contends that it is *per se* fraudulent and deceptive to represent that a sale is a "going-out-of-business sale" when new merchandise is added to existing stock for the sale.[4] The trial court also had to consider, however, that the State stipulated that these "add-

---

**4.** Peterson counters the State's contention by arguing that the 1983 Legislature's defeat of a bill which would have addressed this specific situation evinces an intent not to regulate this type of conduct. House Bill 1176 would have placed restrictions upon the advertisement and operation of going-out-of-business sales, including a requirement of disclosure if new items were added to existing stock for the going-out-of-business sale:

"Any person who advertises merchandise for sale as a 'going-out-of-business sale' must disclose in such advertisement whether new merchandise will be added to the existing inventory of goods to be sold. The disclosure of such information must reasonably convey to the public that new merchandise will be added to the existing stock during the 'going-out-of-business' sale."

We have previously stated that action taken by a subsequent Legislative Assembly cannot be

taken as proof of what a previous assembly intended when it passed a bill. *E.g., Schreder v. Cities Service Co.,* 336 N.W.2d 641, 643 n. 2 (N.D.1983); *St. Alexius Hospital v. Eckert,* 284 N.W.2d 441, 445 n. 2 (N.D.1979); *St. Vincent's Nursing Home v. Department of Labor,* 169 N.W.2d 456, 458 (N.D.1969). On other occasions, however, we have considered subsequent amendments to a statute in ascertaining the legislative intent and purpose of a prior version of the statute. *See, e.g., North Dakota Public Service Commission v. Valley Farmer Bean Association,* 365 N.W.2d 528, 546–547 (N.D.1985); *Slawson v. North Dakota Industrial Commission,* 339 N.W.2d 772, 775 n. 2 (N.D.1983); *State v. Novak,* 338 N.W.2d 637, 640 (N.D.1983). We have been especially willing to look at subsequent enactments when they contain "a clear sense of direction" of what legal concept or principle of law should be applied in this State. *See Lord v. Job Service North Dakota,* 343

ed" items were sold at "bargain prices," and that Eddy Furniture's Jamestown store actually went out of business following the completion of the sale.

The trial court had the benefit of the State's arguments, but found that the advertising and actual operation of the sale was not fraudulent, misleading, or deceitful. We refuse to adopt a *per se* rule as requested by the State. Our review of the trial court's findings is limited to a determination of whether they are clearly erroneous. Our review of the record on appeal does not leave us with a definite and firm conviction that a mistake has been made. *Brodersen v. Brodersen*, 374 N.W.2d 76, 80 (N.D.1985). Thus, the trial court's findings are not clearly erroneous.[5]

Accordingly, the judgment of the district court is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.

N.W.2d 92, 94 n. 1 (N.D.1984); *Jerry Harmon Motors, Inc. v. Union Grain Terminal Association*, 337 N.W.2d 427, 431–432 (N.D.1983).

We find it unnecessary in this case to reconcile these two theories of statutory construction. While there are many factors which must be evaluated when deciding whether to consider the Legislature's subsequent enactment or amendment of a statute in construing an earlier statute, we conclude that a subsequent legislative assembly's *defeat* of a bill on a related subject cannot be taken as proof of what previous assembly intended when it passed a bill. While under appropriate circumstances the Legislature's amendment of a statute may provide insight into the correct construction of the prior statute, attempting to glean an intent from the Legislature's defeat of a bill on a similar subject is too speculative to be given any weight. A bill may be defeated for a variety of reasons, and we will not engage in conjecture by attempting to discern the Legislature's actual intent in doing so.

5. Having upheld the trial court's determination that the conduct in this case was not fraudulent or deceitful, and therefore not violative of Chapters 51–12 and 51–15, N.D.C.C., we need not address the other issues raised by the State on appeal.