Glen SMITH, Plaintiff, Appellant, and Cross-Appellee,

v.

Dave WATSON, Defendant, Appellee, and Cross-Appellant.

Civ. No. 11348.

Supreme Court of North Dakota.

May 28, 1987.

Thomas D. Kelsch, of Kelsch, Kelsch, Ruff & Austin, Mandan, for plaintiff, appellant, and cross-appellee.

Charles E. Johnson, of Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for defendant, appellee, and cross-appellant.

VANDE WALLE, Justice.

Glen Smith sued Dave Watson for damages sustained by Smith's bees, honey, and associated equipment while they were being transported by Watson. The trial court determined that Watson was liable to Smith for damages in the amount of $43,-344 plus interest and costs less transportation costs in the amount of $1,600. The award excluded damages of $12,096 incurred by Smith which the trial court determined were attributable to his failure to mitigate and, therefore, were not recoverable from Watson. Taking into account a $34,850 pretrial payment by Watson to Smith the trial court entered a judgment for Smith in the amount of $12,326.98. Smith appeals, contending that the trial court erred in reducing his damages for failure to mitigate. Watson cross-appeals, contending that the trial court erred in its valuation of the property and refusal to conclude that Smith, by way of mitigation, could have salvaged 100 percent of the "honey feed." We conclude that the trial court erred in reducing Smith's damages for failure to mitigate. Accordingly, we increase Smith's damages by $12,096 for a total judgment of $24,422.98, and as so modified the judgment is affirmed.

During May 1984 Smith contracted with Watson, a common motor carrier, to transport 720 hives of live bees together with honey and associated equipment from Idabel, Oklahoma to Mandan, North Dakota. While en route in Oklahoma, Watson's tractor and semitrailer veered off the four-lane highway, tipped on its side, and after skidding a considerable distance came to rest upside down in a steep ditch. As a result of this accident the cargo was severely damaged. The accident occurred at approximately 9 a.m. on May 24, 1984. The truck driver was taken to the hospital for treatment of minor injuries.

Smith, who was in Oklahoma with two other North Dakota bee operators to assist with loading operations for the transport of their beehives, was notified of the accident by the highway patrol at approximately 10 a.m. Smith made arrangements to have a truck waiting in Oklahoma City to transport any salvageable bees and equipment, and he and the other two bee operators promptly drove a small truck with a Bobcat loader from Idabel to the accident scene, arriving at approximately 6 p.m. The weather at the time of the accident was very hot, and Smith, upon arriving at the accident scene, determined that the bees had either left the hives or had suffocated. Smith and the other two bee operators determined that the semitruck would have to be pulled off the cargo before the hives could be safely removed and, therefore, that no cleanup or salvage operation could be conducted by them that day.

Later that evening Watson contacted Smith by telephone and instructed him to call Gary Volk, a representative of Watson's insurance company. Smith did so, and he was instructed by Volk, "don't do anything with the accident, with the bees.

Don't try to clean anything up. Wait for the adjustor to contact you."

The next day, at approximately noon, the insurance adjustor arrived at the accident scene accompanied by Dr. Joe Moffatt, a professor of entomology. Moffatt was retained by the insurance company as an expert to advise the adjustor at the accident scene regarding the condition of the cargo. Smith was also at the accident scene at that time. The adjustor determined that the cargo was a total loss and, according to Smith's undisputed testimony, stated to Smith, "... it's fine for you to go back and do whatever you want, we will take care of it from here. It is a total loss and we will do the clean-up." Dr. Moffatt conducted the cleanup operation for which he was not monetarily compensated by Watson or the insurance company but was allowed to retain any cargo that he was able to salvage through the cleanup operation.

On appeal Smith asserts that the trial court erred in concluding that he failed to mitigate his damages and in reducing his damages by $12,096 for that failure to mitigate. We agree. We conclude that, as a matter of law, a failure to mitigate damages did not occur in this case.

█ "A plaintiff seeking to recover damages has a duty to minimize or mitigate his damages and may not recover for damages which could have been avoided by reasonable efforts under the existing circumstances." *Johnson v. Monsanto Co.*, 303 N.W.2d 86, 92 (N.D.1981). However, the duty of a plaintiff to mitigate damages is not applicable where the defendant, who by breach of contract has caused injury to the plaintiff, has equal knowledge and opportunity to minimize the damages by performing the contract as he has obligated himself to do:

"The rule which requires a person injured by the wrongful act of another to exercise reasonable care to avoid loss or minimize the resulting damages and requiring a party to a contract, subject to injury for breach by the other party, to make reasonable efforts and exercise ordinary care and diligence to reduce the resulting damages, is not applicable where the party who has a duty to perform a contract has equal opportunity for performance and equal knowledge of the consequences of nonperformance, as he cannot be heard to say that the other party might have performed for him." *Schneidt v. Absey Motors, Inc.*, 248 N.W.2d 792, 793–794 (N.D.1976).

See also, *Baldus v. Mattern*, 93 N.W.2d 144 (N.D.1958).

█ Pursuant to Section 8–09–01, N.D. C.C., a common carrier is liable for loss or injury to property for any cause whatever, except for specified causes not relevant to this case, from the time the carrier accepts the property until proper delivery. See also, *Powers v. Siats*, 244 Minn. 515, 70 N.W.2d 344 (1955). Even when goods being transported by common carrier are initially damaged by an act of God or other cause for which the carrier is exempt from liability, the common carrier has a duty to minimize or mitigate damages to the property and is liable for failure to do so. See generally, 13 C.J.S. Carriers § 83.

█ In this case the damage to Smith's bees, hives, and equipment resulted from a highway accident involving Watson's driver for which, the trial court determined, Smith was not responsible. It is undisputed that the cleanup and salvage operation for the accident was conducted through the efforts of Watson's insurance company. It is also undisputed that whatever cargo was salvageable was used as payment for the cleanup operation. Although Smith happened to be in the vicinity of the accident when it occurred, Watson had the primary responsibility to retain the necessary personnel and machinery to effectuate a cleanup and salvage operation to minimize loss of or damage to the cargo. Watson, as the carrier responsible for the accident, was liable for the cost of the cleanup operation. Therefore, Watson was the beneficiary of the salvaged cargo which was used as payment for those cleanup costs. We hold that, under these circumstances, Watson had a duty to mitigate the damages to Smith's property as a result of the accident occurring during Watson's transport of the

property and that Watson cannot assert a failure by Smith to minimize damages where Watson had the primary responsibility as well as equal opportunity and knowledge to mitigate damages.

Assuming, *arguendo*, that Smith had a duty to mitigate we also hold that, as a matter of law, Smith acted reasonably under the circumstances regarding mitigation of damages. Smith promptly arrived at the scene on the same day the accident occurred. He brought a truck and Bobcat loader with him for possible salvage operations and had made other transport arrangements for the salvageable property. He determined that it would be unsafe to conduct a salvage operation at that time, because the truck was completely rolled over on top of the cargo. He also determined that the bees, the only immediately perishable cargo, had either flown away or were dead and were thus beyond salvage. The trial court subsequently concurred with that determination. Later that evening, an agent of Watson's insurance company instructed Smith not to disturb the accident scene or move any cargo until an adjustor arrived. The insurance adjustor, the professor of entomology, and all three bee owners from North Dakota agreed that the cargo was a total loss and that the salvage value of the cargo would not be worth more than the cost of the cleanup operation. The insurance adjustor instructed Smith not to remove the cargo and stated that the salvage and cleanup operation would be conducted by the insurance company. Under these circumstances we conclude that, as a matter of law, Smith acted reasonably in complying with the insurance agent's instructions that he allow the insurance company to exercise total control of the salvage and cleanup operation. Accordingly, we hold that the trial court erred in reducing Smith's damages by $12,096 for failure to mitigate.

On his cross-appeal Watson asserts that the trial court erred in placing a per-hive value of $35 on the bees, of $29 on the equipment, and of $13 on the honey for a total per-hive valuation of $77. Watson's expert, B.J. Woodworth, testified that the average per-hive value was $45. Smith's expert, Mel Fischer, testified to a per-hive value of between $111 and $125. Plaintiff Smith's testimony was to the effect that the value per hive was between $128 and $200.

The trial court's valuation of property will not be set aside on appeal unless it is clearly erroneous. Rule 52(a), N.D.R. Civ.P.; *Urlaub v. Urlaub*, 348 N.W.2d 454 (N.D.1984). A finding of fact is not deemed to be clearly erroneous unless we are left with a definite and firm conviction that a mistake has been made. E.g., *Eszlinger v. Wetzel*, 326 N.W.2d 215 (N.D. 1982). When there is conflicting testimony regarding valuation the reviewing court will give considerable weight to the findings of the trial court judge who was able to see and hear the witnesses. *Hesch v. Hesch*, 308 N.W.2d 390 (N.D.1981); *Jochim v. Jochim*, 306 N.W.2d 196 (N.D.1981). In this case the trial court's valuation was within the range of the values testified to by the witnesses, and we are not left with a definite and firm conviction that a mistake has been made. Accordingly, we conclude that the trial court's valuation was not clearly erroneous.

The district court judgment is increased by $12,096 and, as so modified, is affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.