FARGO WOMEN'S HEALTH ORGA-
NIZATION, INC., a corporation,
Plaintiff and Appellee,

v.

FM WOMEN'S HELP AND CARING
CONNECTION, a corporation; Patricia
Larson, Darrold Larson, David Pence,
Terri Carlson, John Robertson, Robyn
Robertson, and Loralee Isaacson, De-
fendants and Appellants.

Civ. No. 880177.

Supreme Court of North Dakota.

Aug. 15, 1989.

William Kirschner & Associates, Fargo,
for plaintiff and appellee; argued by Wil-
liam Kirschner.

Briggs Law Firm, Fargo, and Cimron
Campbell, Staff Atty., Concerned Women
for America Educ. and Legal Defense
Ass'n, Washington, D.C., for defendants
and appellants; argued by Cimron Camp-
bell. Appearance by Ward D. Briggs.

GIERKE, Justice.

Patricia Larson, Darrold Larson, David
Pence, Terri Carlson, John Robertson, Ro-
byn Robertson, and Loralee Isaacson, di-
rectors of FM Women's Help & Caring
Connection, Inc., have appealed from a dis-
trict court judgment holding them jointly
and severally liable for damages to Fargo
Women's Health Organization, Inc. (Wom-
en's Health). We affirm.

We related some of the underlying facts
and assertions in *Fargo Women's Health
Organization v. Larson*, 381 N.W.2d 176,
177–178 (N.D.), *cert. denied*, 476 U.S. 1108,
106 S.Ct. 1957, 90 L.Ed.2d 365 (1986):

"The plaintiffs (Women's Health) oper-
ate a medical clinic in Fargo which per-
forms abortions. The Help Clinic, also
operating in Fargo, provides pregnancy
tests and anti-abortion counseling servic-
es but does not perform abortions. Dur-
ing January 1985, Women's Health filed
an action for damages and injunctive re-
lief asserting that the Help Clinic,
through false and deceptive advertising
and related activity, misleads persons
into believing that abortions are conduct-
ed at the clinic with the intent of decep-
tively luring those persons to the clinic to
unwittingly receive anti-abortion propa-
ganda. Women's Health also asserts

that the Help Clinic uses the similar name 'Women's Help Clinic' to intentionally confuse women seeking abortions from Women's Health and to cause them to mistakenly contact the Help Clinic.

\* \* \* \* \* \*

"The trial court's order imposing a preliminary injunction provided in relevant part:

"'THEREFORE IT IS ORDERED, ... that the defendant be enjoined from using the name Women's Help Clinic, or comparable words which are similar, and confusing....

"'... [T]hat the defendants ... shall be prohibited from falsely and deceptively advertising that they provide elective abortions and financial assistance for such services.

"'... [T]hat the defendants do not falsely lull people that come to them for counseling into thinking that they are, in fact, the Women's Health Organization or the Fargo Women's Health Organization, Inc. and that the defendants take no action or inaction which would lull people into believing that they are dealing with the Fargo Women's Health Organization, Inc. when they are in fact dealing with defendants or F-M Women's Help and Caring Connection, Inc....

"'... [T]hat if the defendants advertise using the term abortion, then they must state that they do not perform abortions.'"

We modified the injunction by striking the last sentence and affirmed it as modified.

In *Fargo Women's Health Organization, Inc. v. Larson*, 391 N.W.2d 627 (N.D. 1986), the trial court issued an order finding the Women's Help Clinic and its directors in contempt for violating the preliminary injunction we affirmed in *Fargo Women's Health Organization, Inc., supra*, 381 N.W.2d 176. We affirmed as to Women's Help Clinic and some of its directors, but reversed as to other directors.

The trial court found that when the defendants started advertising there was a noticeable decline in Women's Health's business and that Women's Health began advertising "to counteract the Defendants' advertising ... in its effort to mitigate its damages." By its special verdict, the jury found that the Defendants violated our false advertising statute, proximately causing damages to Women's Health in the amount of $23,500, and assessed punitive damages in the amount of $5,500. Judgment was entered accordingly and the defendants appealed, contending that damages may not be recovered for violation of the false advertising statutes and that the trial court erred in allowing punitive damages and costs.

Chapter 51–12, N.D.C.C., makes false advertising unlawful, provides that a violation is a class B misdemeanor, and authorizes actions to enjoin violations of the chapter. Chapter 51–12 does not mention suits to recover damages. The defendants argue that criminal penalties and injunctions are the exclusive remedies for false advertising and that the courts may not allow damage claims. We disagree.

■ Violation of a statute may be both a crime and a tort, and there may be both a civil tort action and a criminal prosecution for the same act. *See, e.g., Dahlen v. Landis*, 314 N.W.2d 63 (N.D.1981); *Prosser and Keeton on Torts*, §§ 2, 36 (5th Ed.1984). The defendants' arguments ignore the role of the judiciary in the expression of law. *See* § 1–01–03, N.D.C.C. ["The will of the sovereign power is expressed by: ... 7. The decisions of the tribunals enforcing those rules, which, though not enacted, form what is known as customary or common law."]. "Tort law is overwhelmingly common law, developed in case-by-case decisionmaking by courts." *Prosser and Keeton, supra*, § 3, p. 19. Defendants' arguments also ignore legislative enactments such as §§ 9–10–01,[1] 9–10–

1. *"9–10–01. Injury to the property or person of another.* Every person is bound without contract to abstain from injuring the person or property of another or infringing upon any of his rights."

06,[2] and 32–03–01,[3] N.D.C.C.

"The violation of a statute or ordinance may be considered as evidence of negligence." *Keyes v. Amundson*, 391 N.W.2d 602, 608 (N.D.1986). We said in *Keyes, supra*, 391 N.W.2d at 608:

"We believe the appropriate approach in determining whether or not a plaintiff's injury is of the kind that an ordinance was intended to prevent requires interpreting the purpose of the ordinance to include all risks that may reasonably be anticipated as likely to follow from its violation."

Just as "[d]anger invites rescue" [*Wagner v. International Ry. Co.*, 232 N.Y. 176, 133 N.E. 437 (1921)], deception invites correction. Furthermore, a person injured by another's wrongful act must "exercise reasonable care to avoid loss or to minimize the resulting damages" [*Schneidt v. Absey Motors, Inc.*, 248 N.W.2d 792, 796 (N.D. 1976)] and "may not recover for damages which could have been avoided by reasonable efforts" [*Johnson v. Monsanto Co.*, 303 N.W.2d 86, 92 (N.D.1981)]. Women's Health sought to counteract the defendants' false advertising with corrective advertising to mitigate its damages and sued to recover the cost of that advertising. In our view, injury to a competitor (and the expense of mitigating damages) is a risk that may reasonably be anticipated as likely to follow from a violation of the false advertising statutes.

Chapter 51–12, N.D.C.C., is a consumer protection statute, remedial in nature, which "must be liberally construed in favor of protecting consumers." *State ex rel. Spaeth v. Eddy Furniture Co.*, 386 N.W.2d 901, 903 (N.D.1986). "Disseminating false information is a wrong against both consumer and competitor." Note, *Competitive Torts*, 77 Harvard L.Rev. 888, 892 (1964). However, the interest of a consumer wronged by false advertising "will seldom be sufficiently great to impel him to bring suit. The injured competitor therefore may stand as the most effective private vindicator of both his and the consumer's interest in accurate product information." *Id.* As Judge Linde, concurring in *Bob Godfrey Pontiac, Inc. v. Roloff,* 291 Or. 318, 630 P.2d 840, 854 (1981), observed:

"Often it will be cold comfort to the victim of a forbidden act that the wrongdoer will be disciplined, if this excludes liability for damages or other compensation to the injured person, and this policy choice should not be presumed to be implicit in legislative silence."

■ In light of the foregoing considerations and "[i]n light of the strong public policy underpinnings of our false advertising and consumer fraud statutes" (*State ex rel. Spaeth v. Eddy Furniture Co., supra,* 386 N.W.2d at 903), we conclude that a legislative policy choice to insulate false advertisers from liability for damages resulting from violation of our false advertising statutes "should not be presumed to be implicit in legislative silence" with regard to actions for damages. We therefore hold that criminal penalties and injunctions are not the exclusive remedies for false advertising and that one injured by a violation of our false advertising statutes may bring an action to recover damages.

"The two essential primary elements of a cause of action in tort are wrongful conduct by one party followed by damages to the other." *Carroll v. Rye Twp.*, 13 N.D. 458, 101 N.W. 894, 895 (1904). Chapter 51–12, N.D.C.C., declares that false advertising is wrongful conduct. By its special verdict, the jury found wrongful conduct by the defendants, followed by damages to Women's Health. Thus, both "essential primary elements of a cause of action in tort" were met and we find no error in the trial court's allowance of damages resulting from the defendants' false advertising.

---

**2.** *"9–10–06. Willful acts and negligence—Liability.* Everyone is responsible not only for the result of his willful acts but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person. The extent of the liability in such cases is defined by sections 32–03–01 to 32–03–19, inclusive."

**3.** *"32–03–01. Damages for any injury.—* Every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money, which is called damages."

The defendants complain that the plaintiffs did not disclose the legal theory upon which they were relying and that the trial court did not state "the legal basis for its monetary award." "There is no necessity whatever that a tort have a name. New and nameless torts are being recognized constantly." *Prosser and Keeton, supra,* § 1, p. 3. Pleadings need only "advise the other party of the event being sued upon." 5 C. Wright & A. Miller, *Federal Practice and Procedure: Civil,* § 1202, p. 60 (1969). The theory-of-the-pleadings doctrine has been abolished. *Oglala Sioux Tribe of Indians v. Andrus,* 603 F.2d 707 (8th Cir. 1979); 5 C. Wright & A. Miller, *supra,* § 1219; 2A *Moore's Federal Practice* ¶ 8.14 (1987). A pleading need only contain a short and plain statement of the claim; it is not necessary to set out the legal theory upon which the claim is based. *Connecticut Gen. Life Ins. Co. v. Universal Ins. Co.,* 838 F.2d 612 (1st Cir.1988); *Siegelman v. Cunard White Star Ltd.,* 221 F.2d 189 (2d Cir.1955).

The defendants contend that the trial court erred in granting punitive damages. The only argument presented is that "[a]s there has been no tortious harm committed in this case, the exemplary award based upon these fallacious grounds should be overturned." Our conclusion that the trial court did not err in allowing damages as a result of the defendants' false advertising is dispositive of this argument. We find no error in allowing punitive damages.

The defendants contend that the trial court erred in allowing court costs, arguing that "there is no statutory or common law basis for the award of costs in this case." Chapter 28–26, N.D.C.C., provides for the allowance of costs and disbursements. Section 28–26–06, for example, provides for the taxation of a prevailing party's disbursements, while § 28–26–10, provides that "costs may be allowed for or against either party in the discretion of the court." We find no error in the allowance of costs.

The judgment is affirmed.

ERICKSTAD, C.J., and MESCHKE and LEVINE, JJ., concur.

VANDE WALLE, Justice, concurring in result.

The failure of the plaintiff to clearly set forth the legal theory of its cause of action, the trial court's reliance on Chapter 51–12 prohibiting false advertising to award damages for the actions of the defendants without consideration of whether that chapter created a cause of action for the plaintiff, and the majority's rather expansive approval thereof cause me to write separately.

Although violation of a statute may be both a crime and a tort, it is simplistic to observe there may be both a civil tort action and a criminal prosecution for the same act. As an example, *Dahlen v. Landis,* 314 N.W.2d 63 (N.D.1981), cited by the majority does not discuss that issue directly, but the facts of that case simply are that Landis was sued for assault and battery and the issue was whether or not his plea of guilty to the criminal charge of simple assault should have been admitted into evidence in view of the deferred imposition of sentence and subsequent dismissal of the charges pursuant to Section 12–53–18. Presumably it was cited to illustrate there may be both a criminal and civil action arising out of the same circumstance. But that is not novel and sheds little light on the issue before the court. Significantly, the plaintiff, Dahlen, did not rely on a statute for his civil cause of action presumably because it is apparent that such a cause of action existed at common law and requires no statute to authorize it. Nor is it helpful to observe that the violation of a statute or ordinance may be considered as evidence of negligence. None of the parties has contended this is a negligence action and it certainly was not tried as a negligence action but rather FWHO contended the defendants embarked on an intentional course of action to mislead FWHO's customers.

If the action concerned the award of damages to "Jane Doe," one of the plaintiffs and a customer of FWHO, the issue of the nature of the cause of action would be relatively simple, for "the making of un-

true and fraudulent statements may constitute the criminal offense of false advertising, or subject the offender to civil liability for *fraud and deceit."* [Emphasis mine.] 3 Am.Jur.2d *Advertising,* § 3 (1986). But in order to recover for the common-law action of fraud and deceit, the plaintiff "must be a person falling within the purview of those who were intended to act upon the representations, whether made directly or indirectly, and, as a corollary, one who had a right to rely upon the acts of which complaint is made. Moreover, any person, in order to secure redress, must show the fact of reliance and that the asserted fraud has occasioned damage to him personally, ..." 37 Am.Jur.2d *Fraud and Deceit,* § 296 (1968). FWHO does not, of course, meet those requirements and must rely on either common-law authority for its action or, if there is no common-law action, statutory authority for its cause of action. By the time of the trial on damages "Jane Doe" apparently did not participate, and the jury instructions and the special jury verdict form indicated that only FWHO was the plaintiff.

Absent clear legislative direction to the contrary,[1] I do not believe that every Act of the Legislature which is violated does or should result in a private cause of action, where none existed at common law, particularly when other remedies for the violation thereof are provided by the legislation such as in this instance in which both criminal action and injunctive action are specified remedies. Secs. 51–12–13 and 51–12–14, N.D.C.C. I would not, therefore, conclude as does the majority opinion that a violation of those statutes, standing alone, creates a private cause of action for damages.

If FWHO is entitled to damages for the defendants' actions I believe it would be as a result of an action recognized at common law, wrongful interference with business or occupation. See 86 C.J.S. *Torts,* § 54 (1954). It might be questioned whether such a common-law cause of action exists in North Dakota in light of the initial opinion in *Fox v. Higgins,* 149 N.W.2d 369 (N.D.1967), wherein the court held that a complaint which alleged separate and dissimilar wrongful acts of arson, champerty, assault and battery, and others, extending over a period of 12 years, did not allege a continuing tort which would support recovery of damages for interference with the plaintiff's business as a farmer. The court dismissed the action because the statute of limitations had run from the time of the commission of each wrongful act. Language in that opinion could lead the reader to the conclusion the courts of this State do not recognize such a common-law tort. However, in the opinion on petition for rehearing the court clarified its opinion, stating:

> "Our decision does not, as contended by the plaintiff, mean that no right of action exists in this State for interference with business or trade. All that we do hold is that the pleading of the plaintiff and the evidence which he produced in this case do not constitute or prove such a tort." *Fox v. Higgins, supra,* 149 N.W.2d at 372.

Although I do not believe the Legislature intended to create a private cause of action for violation of the false-advertising statutes when it enacted Chapter 51–12, neither do I believe that such enactment with its criminal and injunctive remedies was intended to displace the common-law tort of wrongful interference with business.

We are to construe complaints liberally so as to do substantial justice. E.g., *Jablonsky v. Klemm,* 377 N.W.2d 560 (N.D. 1985). In the case before us a liberal construction of the complaint would support a cause of action for wrongful interference with business or trade as a result of the false advertising. That was not, however, how the trial court viewed it for at the pretrial conference the trial court stated that "the Court is of the opinion that the issue before the Court is only whether there has been a violation of the advertis-

---

**1.** When the Legislature intends a private cause of action to vindicate its legislative mandates it has expressly so stated. *Compare* Sec. 47–22–11, N.D.C.C. [civil action by owner for infringement of trademark specifically authorized].

ing statute and whether there was damages as a result of the violation of that advertising statute ..." Furthermore, both the instructions to the jury and the special jury form were predicated on a violation of the false-advertising statutes. I therefore considered that I should dissent and urge that the judgment be reversed and remanded for a new trial with instructions and a jury form which tells the jury that the action is for wrongful interference with FWHO's business as a result of the alleged false advertising rather than for a per se violation of the false-advertising statutes. I do not do so because the distinction is so technical and the evidence is such that it would not alter the result. Defendants, perhaps recognizing the proper cause of action, argue there is no evidence of interference with business, but my reading of the record indicates that the advertising did, as intended, create confusion among FWHO's customers, and that FWHO's expenditures to correct that confusion were reasonable. I do not agree with the defendants that FWHO must wait until damage has occurred to its business and recover only for that damage. Once the confusion caused by the advertising was established and once FWHO's potential customers became, at least temporarily, customers of FM Women's Help and Caring Connection, FWHO was entitled to counteract the false advertising to avoid future damage to its business. The jury was instructed that "It is the duty of a person who has been injured in his property to exercise ordinary care to avoid loss or minimize the resulting damages" and that if "the injured person reasonably expends goods or services while exercising ordinary care to avoid or minimize consequences of the wrong, he is entitled to recover the reasonable value of the goods and services expended, ..." That is "good law" in North Dakota. *Smith v. Watson,* 406 N.W.2d 685 (N.D.1987).

If I believed the distinctions I have drawn herein would make a difference in the award of damages, I would dissent. I am not convinced they would and this case has been protracted enough. I concur in the result reached by the majority opinion but not in the opinion itself.